SESSIONS *v.* BENNETT, superintendent of banks.

1. Under the act creating the banking department of Georgia (Acts 1919, p. 135), the superintendent of banks is authorized to sue in his own name, or in the name of the bank, on any claim, debt, or demand due said bank, on which the bank could sue.
2. The petition in this case set forth a cause of action.
3. The other exceptions to the order of the judge appointing a receiver are without merit.

No. 3269.    FEBRUARY 27, 1923.

Receivership.    Before Judge George L. Bell.    Cobb superior court.    April 29, 1922.

T. R. Bennett, State superintendent of banks, alleging that he brought his "petition for the benefit of the depositors of the Marietta Trust & Banking Co.," filed his petition and alleged as follows: George H. Sessions is the defaulting cashier of said Marietta Trust & Banking Co., which closed its doors on Feb. 4, 1922, on account of the shortage of said Sessions as its cashier, and of A. H. Gilbert, its vice-president. On that date petitioner took charge of said bank. Sessions is insolvent. On account of said shortage he and Gilbert are indebted to said bank in the sum of $233,941.15, and "he has his additional liability as a stockholder in said bank." Sessions' shortage amounts to $84,405.20, which he has admitted. Sessions has certain real estate, to wit, a lot near Fair Oaks, near the old Joyner property, worth about $2000 and a one-fifth or one-seventh interest in the Sessions estate worth between $3000 and $4000. He has made certain transfers of his property while insolvent. Petitioner is informed that Sessions has other property consisting of stocks and bonds and personal property of a value unknown to petitioner. It is necessary for some one to take charge of and preserve said property and to recover whatever property can be recovered for the benefit of petitioner and other creditors. Petitioner is without adequate remedy at law, and to obtain such relief he must resort to a court of equity. He prays that defendant be enjoined and restrained from transferring, incumbering, or in any manner changing the status of any property he may have, until the further order of the court; that a temporary and permanent receiver be appointed to take charge of, handle, manage, and dispose of the same under the order of the court, to execute any papers and institute any proceedings necessary to protect any creditors, and

13

to pay the proceeds arising therefrom to all of the creditors of Sessions; for process, etc.

Judge Blair of the Blue Ridge Circuit being disqualified, Judge Bell, of the Atlanta Circuit, took jurisdiction of this matter, appointed a temporary receiver, and passed an order requiring Sessions to show cause before him, on April 29, 1922, why a permanent receiver should not be appointed as prayed; and temporarily enjoined him as prayed. Sessions filed no demurrer or answer to the petition, and did not show any cause, at the date named in the rule nisi, why a permanent receiver should not be appointed. On April 29, 1922, the judge passed an order reciting that, no defense being filed, he appointed a permanent receiver to take charge of the assets, real and personal, of the defendant. On May 18, 1922, the defendant sued out his bill of exceptions, in which he alleges that the order appointing said receiver is contrary to law, because (*a*) the allegations of the petition set forth no adequate legal or equitable reasons for the appointment of a receiver; (*b*) the appointment of a receiver was erroneous, because Bennett had no legal right or authority to bring said petition, no judgment being prayed in said petition; (*c*) Bennett had no legal right or authority to bring said petition for the benefit of the depositors of said Marietta Trust & Banking Co.; (*d*) the appointment of a receiver is erroneous and contrary to law, because it was not sought by any creditor having any lien or for the benefit of a creditor with lien; (*e*) the order passed was contrary to law, because it was predicated upon a petition which it a nullity, in that Bennett had no legal or equitable right to bring said petition under the allegations thereof; (*f*) said order is contrary to law, because it was passed upon a petition which sets forth no cause of action, legal or equitable.

*Anderson & Roberts,* for plaintiff in error.

*E. H. Clay* and *Fred Morris,* contra.

HINES, J. (After stating the foregoing facts.) Can the superintendent of banks, when he has taken possession of the assets of an insolvent bank for the purpose of liquidation under the act creating the banking department of this State, sue on a demand or debt due the bank in his own name? "As a general rule, the action on a contract, whether express or implied, or

whether by parol or under seal, or of record, must be brought in the name of the party in whom the legal interest in such contract is vested." Civil Code (1910), § 5516. So it has been held that a receiver in chancery can not maintain an action at law in his own name, unless he has in himself the legal title. Murtey v. Allen, 71 Vt. 377 (45 Atl. 752, 76 Am. St. R. 779). So where a receiver is appointed by a court to "collect, take possession of, preserve, and care for" the property of an insolvent corporation, his appointment does not transfer to him title to choses in action so that he can sue thereon in his own name. Hayward v. Leeson, 176 Mass. 310 (57 N. E. 656, 49 L. R. A. 725). But a receiver may sue in his own name where he is expressly authorized so to do by statute. North American Bank v. Wheeler, 28 Conn. 433 (73 Am. D. 683). A receiver can likewise sue in his own name when authorized by decree of the court appointing him. Davis v. Gray, 16 Wall. 203 (21 L. ed. 447); Castleman v. Templeman, 87 Md. 546 (40 Atl. 275, 41 L. R. A. 367, 67 Am. St. R. 363).

Where a receiver appointed under a statute is a quasi-assignee of an insolvent corporation, or he is made the representative of creditors, he can sue upon claims due such corporation in his own name. Under the national-bank act, the comptroller of the currency is authorized, when any association refuses to pay its circulating notes, to forthwith appoint a receiver, who shall "take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to such association, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and on a like order sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders provided for by the twelfth section of this act." 13 Stat. 114, § 50 (U. S. Comp. St. § 9821). The Supreme Court of the United States held that "A receiver of a national bank, appointed by the comptroller of the currency under the 50th section of the national-banking act, may sue for demands due the bank in his own name as receiver, or in the name of the bank." Bank v. Kennedy, 17 Wall. 19 (21 L. ed. 551). Under the act creating the department of banking of

this State, the superintendent of banks is clothed with the same powers as a receiver of a national bank association, appointed by the comptroller of the currency. This act declares that "the superintendent shall collect all debts due and claims belonging to such bank, and by making application to the superior court of the county in which such bank is located, or to the judge thereof if said superior court be not then in session, may procure an order to sell, compromise, or compound any bad or doubtful debt or claim, and on like order the superintendent may sell the real and personal property of such bank on such terms as the court, or the judge thereof, shall direct." The similarity between this act and the national-bank act on this subject is striking. This State statute was evidently modeled upon the national-bank act. So if the receiver of a national-bank association can sue on such claims and debts under the power to " collect all debts, dues, and claims belonging to such association," we see no reason why the superintendent of banks, under the same power given him by our statute, can not sue on debts due a State bank whose assets he has sequestered for liquidation. *Bullock* v. *Oliver,* ante, 151 (116 S. E. 293).

Furthermore, while the act creating the department of banking of this State does not expressly declare that the title to claims due an insolvent bank, when the superintendent takes possession thereof for liquidation, shall vest in him, he is made by such act a quasi-assignee of all the assets of such bank. Ga. Laws 1919, pp. 138, 154, art. VII, §§ 1-28. The superintendent is a statutory receiver. *Bennett* v. *Wheatley,* 154 *Ga.* 591 (115 S. E. 83). Under our statute, the superintendent of banks does not occupy the position of an ordinary chancery receiver or arm of the court appointing him. He is a representative of the creditors of the bank and is a quasi-assignee, and as such may sue on claims due the bank either in his own name or in the name of the bank.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., disqualified.*