BENNETT, superintendent, *et al.* v. GREEN *et al.*

1. General descriptions, such as "all the estate, both real and personal, of the grantor," "all my land in a certain town, county, and State." and "all my land, wherever situated," have been held good and

sufficient. Where a security deed conveys a certain lease from the lessor to the grantor in such deed, which deed fully describes the lease and the leased premises and contains this provision: "including also all the machinery, equipment, stock in trade and all other assets" of the grantor, the description of such personal property is sufficient.

2. Said security deed is such a conveyance of title as will defeat laborers' liens upon the property embraced therein, if their creation was junior to this instrument, or if such deed was taken bona. fide by the grantee and without notice of such liens.

3. When the superintendent of banks takes possession of an insolvent bank and its assets for the purpose of liquidating its affairs, he acts in the capacity of a statutory receiver, and a court of equity will enjoin any unauthorized interference with his possession of the assets of such insolvent bank. Especially will injunction in such case lie when the plaintiff also contests the justness of laborers' liens sought to be enforced against the grantor in such security deed and the property therein conveyed.

4. The court erred in refusing to grant a temporary injunction.

No. 3664. OCTOBER 9, 1923.

Equitable petition. Before Judge Meldrim. Chatham superior court. February 14, 1923.

T. R. Bennett, as superintendent of banks, and the Peoples' Bank of Savannah filed their petition for injunction against Joe Green and Jake Washington, and made this case: The superintendent of banks took charge of the Peoples' Bank of Savannah for the purpose of liquidating its assets for the benefit of depositors and others interested. Among the assets of the bank were certain notes of the Chatham Manufacturing Company in favor of the bank. Six of these notes, aggregating $12,014.64, are in the hands of the Mechanics & Metals Bank of New York, having been transferred to it by the Peoples' Bank prior to the time the superintendent took charge of the property and assets of the latter bank, to secure an indebtedness due by the Peoples' Bank to the Mechanics & Metals Bank. The payment of all the notes of the manufacturing company to the Peoples' Bank, including the above six notes, are secured by a deed by the manufacturing company to the Peoples' Bank, dated July 16, 1921, and recorded Sept. 30, 1921. This deed conveyed a certain lease from the Savannah & Atlanta Railway Co. to the manufacturing company, dated July 1, 1919, embracing certain described premises. After fully describing the premises embraced in said lease, and following a semicolon, there is in said deed this provision: "including also all the

machinery, equipment, stock in trade and all other assets of the said Chatham Manufacturing Company." Certain laborers' liens, one in favor of Joe Green for $330 and another in favor of Jake Washington for $290, against the manufacturing company, were levied upon certain machinery as the property of the manufacturing company. This property was part of that embraced in the above-described deed from the manufacturing company to the Peoples' Bank of Savannah. This deed was made to secure not only the indebtedness of $2000 mentioned therein, but all other and further indebtedness of the manufacturing company to the bank, under the provision therein that it was "made to cover and include not only the indebtedness stipulated herein, but also any and all indebtedness which the said Chatham Manufacturing Company may hereafter owe to the Peoples' Bank of Savannah." By virtue of an order issued by Chatham superior court, the sheriff of Chatham County will, under levies of executions issued upon foreclosures of said laborers' liens, proceed to sell said property. Under the law of Georgia, title to said property so levied on is in the bank superintendent, and the plaintiffs in said executions have no right to proceed to sell said property thereunder. Under the law of Georgia, no lien shall be acquired in any manner binding or affecting any of the assets of a bank which has been placed in the hands of the superintendent of banks and after he has taken charge of the same. Said levies upon said property are illegal as against the rights of the superintendent of banks. The superintendent is informed and believes that said levies are excessive, that the amount due to Joe Green by the manufacturing company is only $106.25, and that the amount due Jake Washington by it is only $183.10. The superintendent is wholly remediless by the strict rules of law. He alone has the right to control said assets, and no one has the right to file or invoke in his behalf the remedy of claim or of affidavit of illegality to postpone said sale; and the law does not contemplate that he should be forced to resort to the remedy of claim or of illegality and give bond to release the assets and property of said Peoples' Bank from the lien of a levy made upon property the title to which was, at the time of the levy, in the possession, custody, and control of said superintendent. He prays for an injunction, restraining the sheriff and plaintiffs in said ex-

ecutions from proceeding to sell said property under the levies made thereunder.

The defendants demurred to the petition on the grounds: (1) that it sets forth no equitable or legal cause of action; (2) that the deed to secure a debt, under which plaintiff claims title, does not sufficiently describe the property claimed; (3) that the plaintiff has a complete and adequate remedy at law by a claim; (4) that this deed to secure debt merely transfers the lease of the plaintiff, which is not such a conveyance of title as will defeat the claims of the defendants; (5) that the security deed conveys no title or interest as against the defendants, for the reason that the interest transferred is not of record in such manner as to charge them with notice of the interest conveyed. The court below sustained the demurrer on the ground that the petitioner had an adequate and complete remedy at law, and refused to grant a temporary injunction; and error is assigned upon this judgment.

*Oliver & Oliver* and *John Z. Ryan,* for plaintiff.

*Gilbert E. Johnson* and *C. E. Alexander,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. Is the description of the personal property embraced in the security deed void for lack of sufficiency? The description is as follows: "all of the machinery, equipment, stock in trade, and all other assets of the said Chatham Manufacturing Company." A mortgage must specify "the property upon which it is to take effect." Civil Code (1910), § 3257. No prescribed form is essential to the validity of a deed to lands or personalty. If sufficient in itself to make known the transaction between the parties, no want of form will invalidate it. Civil Code (1910), § 4182. The description of property in a deed is sufficiently certain when it shows what property the grantor intended to convey and makes its identification practicable. *Andrews* v. *Murphy,* 12 *Ga.* 431; *Price* v. *Gross,* 148 *Ga.* 137 (96 S. E. 4). A particular name by which a given piece of realty is generally known will be sufficient to render its identification practicable. *Oatis* v. *Brown,* 59 *Ga.* 711; *McAfee* v. *Arline,* 83 *Ga.* 645 (10 S. E. 441) ; *Johnson* v. *McKay,* 119 *Ga.* 196 (45 S. E. 992, 100 Am. St. R. 166) ; *Wellmaker* v. *Wheatley,* 123 *Ga.* 201 (51 S. E. 436) ; *Hollywood Cemetery Corp.* v. *Hudson,* 133 *Ga.* 271, 274 (65 S. E. 777). General descriptions are held good. *Nichols* v. *Hampton,* 46 *Ga.* 253; *Thomas Furniture Co.* v. *T. &*

C. Furniture Co., 120 Ga. 879 (48 S. E. 333); Duke v. Neisler, 134 Ga. 594 (68 S. E. 327, 137 Am. St. R. 250). A deed which conveys all the grantor's interest in real estate in a certain town, without describing the lot separately, is not void for uncertainty. Harmon v. James, 7 S. & M. (Miss.) 111 (45 Am. D. 296). Descriptions, such as "all the estate, both real and personal, of the grantor," "all my land in a certain town, county and State," "all my land, wherever situated," "all my right, title, and interest in and to my father's estate at law," and the like, have been held good. Holley's Executor v. Curry, 58 W. Va. 70 (51 S. E. 135, 112 Am. St. R. 944, 946); Pettigrew v. Dobellaar, 63 Cal. 396; Frey v. Clifford, 44 Cal. 335; Austin v. Dolbee, 101 Mich. 292 (59 N. W. 608); Huron Land Co. v. Robarge, 128 Mich. 686, 87 N. W. 1032; Warren v. Syme, 7 W. Va. 474.

A general description of this kind is tantamount to a specific description of each unit composing the whole. So when a grantor conveys all of his property, or all of his property of a particular kind, the description embraces each specific item of the whole or kinds of property conveyed. The description in this security deed, of "all the machinery, equipment, stock in trade, and all other assets of the said Chatham Mfg. Co." embraces all the machinery, equipment, stock in trade, and all other assets of said company, and is sufficient. The instant case is different from those relied on by counsel for the defendants in error. In Stewart v. Jaques, 77 Ga. 365 (3 S. E. 283, 4 Am. St. R. 86), the mortgaged property was described as "one bay mare, two mare-mules, one horse-mule;" and this court rightly held that such description was too indefinite for the reason that it would apply to any bay mare, any two mare-mules, and to any horse-mule. In Reynolds v. Tifton Guano Co., 20 Ga. App. 49 (92 S. E. 389), the mortgage described the property as "seven head of mules and horses," and this description was clearly insufficient. If the mortgage had described the property embraced therein as all the mules and horses of the mortgagor, the case would have been different. In Milner Banking Co. v. Adair, 18 Ga. App. 575 (90 S. E. 170), the property mortgaged was described as "5 black mare-mules ranging from 6 to 9 years old and now in my possession at Haralson, Ga., Coweta county, and weighing from 900 lbs. to 1150 lbs;" and it was held that this description was too indefinite to impart notice to a third person,

to whom the mortgagor subsequently mortgaged one black mare-mule 8 years old and one black mare-mule 9 years old, that these two mules were included in the former mortgage. The words of description in the mortgage may be sufficient to create a lien on the property inter partes, and yet be insufficient to impart constructive notice by its record of the lien thereby created. *Nussbaum* v. *Waterman,* 9 *Ga. App.* 56 (70 S. E. 259). The description in this security deed, which was duly recorded, was sufficient to impart notice to others of the title thereby conveyed; and the title of the bank thereto is not void for lack of sufficient description.

2. It is next insisted by counsel for defendants in error, that the security deed from the manufacturing company to the bank merely transfers the lease from the railway company to the former, and does not amount to such a conveyance of the machinery and equipment of the grantor as will defeat the liens of the defendants. There is some ambiguity in the subject-matter conveyed by the security deed. It may convey and transfer only a lease embracing the real estate described and the machinery, equipment, stock in trade and other assets of the grantor; or the purpose of the deed may be to transfer this lease and to convey this personal property. This seems to be the reasonable construction of the instrument, but its true purport and meaning can not be definitely determined by an inspection of the lease which is not set out in the record. Whatever may be the subject-matter of the security deed, the grantee therein acquired the grantor's interest in and title to the lease; and the grantee thus acquired whatever interest and title the lessee had in these premises and to this personal property. The transfer of the lease put in the grantee the legal title thereto, and gave to it all the right, title, and interest of the lessee in the property leased. This being so, the security deed is such a conveyance of title as would defeat the alleged liens of the defendants on the property therein embraced, if their creation was junior to this instrument, or if such deed was taken bona fide and without notice of such liens. *Frazer* v. *Jackson,* 46 *Ga.* 621; *Bennett Lumber Co.* v. *Martin,* 132 *Ga.* 491 (64 S. E. 484); *Oglethorpe Savings &c. Co.* v. *Morgan,* 149 *Ga.* 787 (102 S. E. 528).

3. The above points are the only ones discussed by counsel for the defendants in error; but the trial judge sustained the demurrer to the petition on the ground that plaintiff had an adequate and

37

complete remedy at law. So it becomes necessary to determine this question. Section 3, Article VII, of the act creating the Banking Department, is as follows: "*Effect of Notice or Possession.*— The posting of such notice by the directors, or the taking possession of any bank by the Superintendent of Banks, shall be sufficient to place all assets and property of such bank, of whatever nature, in possession of the Superintendent of Banks, and shall operate as a bar to any attachment or any other legal proceedings against such bank or its assets; and no lien shall be acquired in any manner binding or affecting any of the assets of such bank after the posting of such notice or taking possession of any bank by the Superintendent, and every transfer or assignment by such bank or its authority, of the whole or any part of its assets, after the posting of such notice by the taking possession of such bank, shall be null and void." The purpose of this provision of this act " is to protect the possession of the assets of the bank by the superintendent from interference by any legal proceedings, such as one for receivership, by levy of process upon such assets, or any proceedings by which the possession of the superintendent would be disturbed." *Berrien County Bank* v. *Alexander,* 154 *Ga.* 775 (115 S. E. 648). When the superintendent of banks takes possession of an insolvent bank for the purpose of liquidating its affairs, he acts in the capacity of a statutory receiver. *Carey* v. *Giles,* 9 *Ga.* 253; *Bennett* v. *Wheatley,* 154 *Ga.* 591, 599 (115 S. E. 83).

The courts will enjoin any unauthorized interference with the possession of a receiver appointed in a judicial proceeding. *Woodburn* v. *Smith,* 96 *Ga.* 241 (22 S. E. 964); *Vestel* v. *Tasker,* 123 *Ga.* 213 (51 S. E. 300); *Donehoo* v. *Rogers,* 146 *Ga.* 75 (90 S. E. 382). In *Woodburn* v. *Smith,* this court said: " It is frequently necessary for a receiver to pray for an injunction to restrain any unauthorized interference with the property in his possession, and the granting of such an injunction in such cases is a necessary incident to the power of appointing receivers." So, if a statutory receiver stands upon the same footing as a receiver appointed in a judicial proceeding, injunction will lie to restrain any interference with his possession of property under his custody or control. But it may be said that the title to the assets of a bank, when taken possession of by the superintendent, vests in him as a statutory

receiver (*Bullock* v. *Oliver,* 155 *Ga.* 151 (116 S. E. 293) ; *Sessions* v. *Bennett,* 155 *Ga.* 193 (116 S. E. 300), for which reason he can file a claim; but that the title does not vest in a receiver appointed in a judicial proceeding to the property placed in his possession (34 Cyc. 184), for which reason he can not file a claim. Besides, it is true that a deed to secure a debt passes the title to the vendee to the property embraced therein. Civil Code (1910), § 3306. The vendee in a security deed, after the debt matures, can bring ejectment against the vendor upon the title put in him by such deed. *Carswell* v. *Hartridge,* 55 *Ga.* 412; *Biggers* v. *Bird,* Id. 650; *Dykes* v. *McVay,* 67 *Ga.* 502. The security deed passing the title to the vendee after the debt matures, such vendee can file a claim to the property embraced in the security deed, and can support his claim by the title which he gets thereunder, when levied upon by process which is not superior to his title. This being so in the case of an ordinary vendee in a security deed, does the superintendent of banks, when he takes possession of the assets of an insolvent bank which is the vendee in a security deed, stand upon the same footing as to the property therein embraced as the ordinary vendee? We think not.

As we have seen, the power to grant such injunction is founded upon the doctrine that it is incident to the power to appoint a receiver. As the remedy by injunction is an incident to the power to appoint judicial receivers, why is it not an incident to the power to appoint statutory receivers? The writ of injunction is granted to protect the possession of a judicial receiver, on the ground that his possession is that of the court. Why is not the possession of a statutory receiver that of the State, which the State will not permit to be disturbed? The superintendent of banks, in taking charge of the affairs of an insolvent bank for liquidation, is the agent of the State. He acts for and in behalf of the commonwealth. His possession is that of the State, who is his principal. The act creating the office of superintendent of banks expressly declares that his possession shall not be interfered with, and that the property in his possession shall not be seized under judicial process or otherwise. So it would seem that the grant of an injunction to prevent interference with his possession stands upon the same footing as the grant of this writ to protect the possession of a receiver in a judicial proceeding.

But we do not decide that a judicial receiver has no such interest in the property over which he is appointed as would authorize the interposition of a statutory claim if he stood in the position of an ordinary claimant. See *Wade* v. *Hamilton,* 30 *Ga.* 450; *Witt* v. *Nesar,* 145 *Ga.* 674 (89 S. E. 747); *Smith* v. *Johnson,* 149 *Ga.* 212 (99 S. E. 530).

So we are of the opinion that the superintendent of banks, when he takes charge of the assets of a bank for liquidation, should not be required to resort to the ordinary remedies of claim and illegality, and to give bonds in such cases; but will be granted the writ of injunction to prevent interference with his possession of property to which such bank has the title.

The superintendent of banks further asserts that the liens of the laborers have been foreclosed for greater sums than they are entitled to; and that for this reason the sale of the property to which the bank has title under this security deed, under the executions issuing on the foreclosure of these liens, should be enjoined until the amounts due these laborers can be determined. The learned trial judge held that the superintendent has a plain legal right to contest the existence or amount of these laborers' liens (Civil Code (1910), § 3366, par. 6), and for this reason an injunction should be denied; but the same reason which prompts the court to grant injunctions to prevent the interference with the possession of property by receivers applies with equal force in this particular. Besides, the writ of injunction will issue to prevent a multiplicity of suits. The courts will grant injunctions to restrain levies upon such property, on the ground that the power to do so is an incident to the power to appoint a judicial or statutory receiver. So we are of the opinion that the court below erred in not granting an injunction in this case.

*Judgment reversed. All the Justices concur, except Russell, C. J., dissenting.*